IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTOPHER SMITH | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| INTERNATIONAL SOS ASSISTANCE, INC., et al. | : | NO.   11-3125 |

**MEMORANDUM**

**L. Felipe Restrepo, J.**                                                                                   **December 6, 2013**

This suit now consists of a medical negligence claim by plaintiff Christopher E. Smith ("Smith") against Navesh Kandiyil, M.D. ("Kandiyil"), arising from Kandiyil's participation in the ankle surgery that Smith underwent on a military base in Kosovo.[1]  For the reasons that follow, the Court will deny Kandiyil's motion for summary judgment.

**I.   BACKGROUND**

The following facts are undisputed:  In December of 2008, Lieutenant Colonel Carl T. Hasselman, M.D. ("Dr. Hasselman") performed ankle-ligament reconstruction surgery on Smith, who was then employed as a civilian contractor on a U.S. military base (Camp Bondsteel) in Kosovo.  *See* Affidavit of Christopher E. Smith, Doc. 27-2, p. 1-4, ¶¶1-17.  Dr. Hasselman is an experienced orthopedic surgeon who has performed more than a thousand such operations.  *See* Hasselman deposition, Doc. 26-1, p. 7-10.  Kandiyil, employed as a civilian medical officer at Camp Bondsteel through an agency called International SOS PTE, Ltd., was in the operating room and participated in the surgery.  *See* Affidavit of Navesh Kandiyil, M.D., Doc. 26-4, p. 2-3, ¶¶ 3, 8; Kandiyil Work Contract, Doc. 27-1, p. 1.  Smith subsequently suffered complications that led to a second ankle surgery.  Smith's second surgeon, Dr. Chason Hayes, concluded that

---

[1] A second defendant, International SOS Assistance, Inc., has been dismissed from the case.  *See* Doc. No. 25.

1

the complications resulted from the faulty placement of non-absorbable sutures around Smith's dorsal cutaneous nerve during his first operation.  *See* Dr. Hayes' Report, Doc. 26-4, p. 5-6.

Smith alleges that Kandiyil is responsible for the placement of the non-absorbable sutures.  Both Kandiyil and Dr. Hasselman have testified that Dr. Hasselman, not Kandiyil, inserted those sutures.  *See* Kandiyil Affidavit, Doc. 26-4, p.3, ¶10; Hasselman Deposition, Doc. 27-1, p. 19-21.  Kandiyil moves for summary judgment on the grounds that 1) there is no genuine dispute as to any material fact, and 2) Kandiyil is immune from suit pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b).

## II. DISCUSSION

In ruling on a motion for summary judgment, the Court must "construe the evidence in the light most favorable" to the non-moving party, *Zimmerman v. Norfolk S. Corp.*, 706 F.3d 170, 176 (3d Cir. 2013), and grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  F.R.C.P. 56(a).  "A 'genuine dispute' exists if a reasonable jury could find for the nonmoving party."  *Zimmerman*, 706 F.3d at 176.

Construing the evidence most favorably to Smith, there is a genuine dispute as to whether Kandiyil placed the sutures that caused his injury.  A reasonable jury could find that he did, despite the contrary testimony, on the basis of Dr. Hayes' opinion that the suturing was egregiously negligent and inexpert, *see* Doc. 27-1, p. 30-31 and p. 6, ¶ 28; Kandiyil's admitted participation in the surgery, *see* Doc. 26-4 at ¶ 8-9 ("I acted as a surgical assistant . . . I made a skin incision, I removed a bond fragment and assisted in the skin closure . . ."); Smith's testimony that Kandiyil told him that he "did the suturing and sewed me up," Doc. 27-2, p. 7, ¶ 33; Dr. Hasselman's uneven recollection, *see* Doc. 27-1, p. 24-28; and the two doctors' conflicting testimony about other details of the procedure, *see, e.g.*, *id.*, p. 27 (Dr. Hasselman's

testimony that he, not Kandiyil, removed any bone fragments or ligament calcifications).  A jury might reasonably question Kandiyil's credibility, moreover, given the dispute as to whether Kandiyil had Smith's permission to participate in the surgery, *compare* Kandiyil Affidavit, Doc. 26-4, p. 3, ¶7, *with* Smith Affidavit, Doc. 27-2, p. 4, ¶19.  The question of who placed the sutures is clearly material.

Kandiyil's second argument in support of summary judgment is that the sovereign immunity of the United States, which cloaks Dr. Hasselman by virtue of the "foreign country" exception to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b) & 2680(k), extends to Kandiyil because he was acting as Dr. Hasselman's agent.  The Court notes, first, that Kosovo does qualify as a "foreign country" despite its non-sovereign status at the time.  *See Smith v. United States*, 507 U.S. 197, 204 (1993) (overruling *Beattie v. United States,* 756 F.2d 91 (D.C. Cir. 1984) and deeming Antarctica a "foreign country" under the FTCA).  Contrary to Kandiyil's assertions, however, neither the FTCA nor federal common law provides for a blanket extension of sovereign tort immunity to persons acting at the government's behest.  *See, e.g.* FTCA, 28 U.S.C. § 2671 ("'Federal agency'. . . does not include any contractor with the United States"); *Harris v. Kellogg Brown & Root Servs., Inc.*, 724 F.3d 458, 478 (3d Cir. 2013) (noting that "defense contractors are not part of the government, so concepts like sovereign immunity . . . do not apply directly to defense contractors").

Rather, federal courts have recognized two defenses that contractors may raise in order to argue that the government's sovereign immunity shields them from tort suit.  The first is the "government contractor defense," which is a *preemption* defense.  *See Boyle v. United Technologies Corp.*, 487 U.S. 500 (1998) (holding that FTCA's "discretionary function" exception preempts state products liability suits against military contractors who follow precise government design specifications and warn of dangers); *id.* at 505 n.1 (emphasizing *Boyle*'s

limited reach); *Carley v. Wheeled Coach*, 991 F.2d 1117, 1120 (3d Cir. 1993) (extending *Boyle* to non-military government contractors); *Harris*, 724 F.3d at 480 (applying *Boyle*'s logic to hold that FTCA's "combatant activities" exception preempts a tort suit against a "private service contractor" who "is integrated into combatant activities over which the military retains command authority" if the claim "aris[es] out of the contractor's engagement in such activities"). Kandiyil has not clearly raised the government-contractor defense, nor offered any argument that would support a finding of preemption here.[2] *Cf. Al Shimari v. CACI Intern., Inc.*, 679 F.3d 205, 217-18 (4th Cir. 2012) ("*Boyle* preemption . . . is, *ipso facto*, not immunity. . . . Though *Boyle* preemption, like sovereign immunity, may be invoked to bar state law claims, the encapsulated rights serve distinct purposes.").

Kandiyil's arguments hew closer to the defense of "derivative sovereign immunity," a doctrine that some federal circuits have identified as arising out of *Yearsley v. W.A. Ross Construction Co.*, 309 U.S. 18 (1940). *See In re World Trade Ctr. Disaster Site Litig.*, 521 F.3d 169, 196 (2d Cir. 2008); *Butters v. Vance Int'l, Inc.*, 225 F.3d 462, 466 (4th Cir. 2000); *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 207 (5th Cir. 2009); *Myers v. United States*, 323 F.2d 580, 583 (9th Cir. 1963); *McMahon v. Presidential Airways, Inc.*, 502 F.3d 1331, 1343 (11th Cir. 2007). Different circuits have articulated this defense in different terms, but they have universally required a defendant to show that he acted pursuant to "validly conferred" government authority and did not deviate from the government's directives. *See Yearsley*, 309 U.S. at 414; *see also, e.g., Ackerson*, 589 F.3d at 204-07. Assuming, *arguendo*, that this defense is applicable, it does not entitle Kandiyil to judgment as a matter of law. It is far from clear that

---

[2] While Kandiyil included "the Government Contractor Defense" among the thirty-one affirmative defenses listed in his Answer, *see* Doc. 12, neither his Motion for Summary Judgment nor the accompanying Memorandum of Law argues that this case entails a "significant conflict" between federal interests and state law, *see, e.g., Boyle*, 487 U.S. at 504-13, and Kandiyil certainly has not addressed the "analytic process" a court must undertake to determine if FTCA preemption applies in a given case. *Harris*, 724 F.3d at 479.

4

Kandiyil participated in Smith's surgery pursuant to a valid delegation of government authority and conformed to the government's directives. As the Fourth Circuit recently wrote of a derivative immunity claim, Kandiyil is "requesting immunity in a context that has been heretofore unexplored," *Al Shimari*, 679 F.3d at 223, and, to the extent the Court can posit the relevant analysis, there remain genuine disputes of material fact.

### III. CONCLUSION

For the foregoing reasons, the Court will deny Kandiyil's motion for summary judgment. Should Kandiyil wish to raise a derivative sovereign immunity or preemption defense at trial, he must move to do so as directed in the accompanying Order.